UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Tacen Payne

Write the full name of each plaintiff.

**24-cv-03860**

(Include case number if one has been assigned)

-against-

City of New York, Administration for Children's Services & D.C. 37 (Union)

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

Do you want a jury trial? ☑ Yes   ☐ No

## EMPLOYMENT DISCRIMINATION COMPLAINT

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 1/24/19

## I.    PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

Taren                                          Payne

First Name                    Middle Initial        Last Name

2289  5th  Avenue  130

Street Address

New York                        NY              10037

County, City                              State              Zip Code

814 580 8565                        T. Payne @ live.com

Telephone Number                    Email Address (if available)

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:   City of New York Administration
Name   for Children's Services: 150 William Street

Address where defendant may be served

New York, NY          10038

County, City              State        Zip Code

Defendant 2:   D.C. 37
Name

75 Maiden Lane, Suite 603

Address where defendant may be served

New York, NY          10038

County, City              State        Zip Code

Defendant 3:

_____

Name

_____

Address where defendant may be served

_____

County, City                    State              Zip Code

## II.  PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

City of New York Administration of Childrens Services

Name

150 William Street

Address

New York, NY 10037

County, City                    State              Zip Code

## III.  CAUSE OF ACTION

### A. Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐ race: _____

☐ color: _____

☐ religion: _____

☐ sex: _____

☐ national origin: _____

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☑ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: Physical & neurological

☑ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B. Other Claims

In addition to my federal claims listed above, I assert claims under:

☑ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☑ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

## IV.    STATEMENT OF CLAIM

### A.    Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

☐    did not hire me

☑    terminated my employment

☐    did not promote me

☑    did not accommodate my disability

☑    provided me with terms and conditions of employment different from those of similar employees

☑    retaliated against me

☑    harassed me or created a hostile work environment

☐    other (specify):    _____

_____

### B.    Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

Please See attached

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

Page 5

## V.   ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☑ Yes (Please attach a copy of the charge to this complaint.) -In possession of SSOC

When did you file your charge?   *NYSDHR*

☐   No

Have you received a Notice of Right to Sue from the EEOC?

☑ Yes (Please attach a copy of the Notice of Right to Sue.)

Notice

Mailing date on envelope

What is the date on the Notice?   *1/03/2024*   *1/19/24*

When did you receive the Notice?   *2/12/2024* -No regular mailman assigned to delivery area and mail is often not timely delivered.

☐   No

## VI.   RELIEF

The relief I want the court to order is (check only those that apply):

☑   direct the defendant to hire me

☑   direct the defendant to re-employ me

☐   direct the defendant to promote me

☐   direct the defendant to reasonably accommodate my religion

☑   direct the defendant to reasonably accommodate my disability

☑   direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here):

- To pay plaintiff for wrongfully withheld overtime payments in excess of 3,000.
- To pay plaintiff compensation in alignment with State and federal proscribed penalty (consecutively) for illegal termination.
- To pay all back earnings/pay missed due to wrongful termination.
- To pay all medical and associated fees due to wrongful termination   →cont...

- To pay all associated legal and travel expenses associated with plaintiffs pursuit of case

- To pay a penalty for associated missed opportunity costs that continue due to illegal termination.

- To pay costs associated (realized/unrealized) with plaintiffs MSW attainment, as it would have been covered by ACS if not for its management/illegal/wrongful termination of plaintif.

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| 12/28/23 | *Taren Payne* |
| Dated | Plaintiff's Signature |
| *Taren* | *Payne* |
| First Name      Middle Initial | Last Name |
| 2289  5th Avenue  130 | |
| Street Address | |
| New York, NY | 10037 |
| County, City                                State | Zip Code |
| 814 580 8565 | *Tpayne @live.com* |
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☐ No

> If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 01/03/2024

To: Taren Payne
2289 Fifth Avenue, 13D
New York, NY 10037

Charge No: 16G-2022-04351

EEOC Representative and email:    HERNAN MORALES
S/L Program Manager
hernan.morales@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
01/03/2024
Timothy Riera
Acting District Director

Cc:

City of New York, Administration for Children's Services
150 William Street
New York, NY 10038

Please retain this notice for your records.



. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE,  $300

NEW YO

19 JAN 20

U.S. POSTAGE)) PITNEY BOWES

ZIP 10004    $ 000.63⁰
02 4W
0000360941 JAN  17  2024

10037-177634

[Print in **black** ink all areas in **bold letters**]

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-------------------------------------------------x

In the Matter of the Application of

_____Taren - Payne_____,

[fill in name(s)]                    Petitioner(s),

- against-

NYS Division Of Human Rights
& NYC Administration for Childress Services

_____,

[fill in name(s)]          Respondent(s).
-------------------------------------------------x

**Index Number**

_101255/2023_

**NOTICE OF PETITION**

PLEASE TAKE NOTICE that upon the Verified Petition of _Taren Payne_
_____ [your name(s)], sworn to on _November 27_, 2023

[date Verified Petition notarized], and the attached exhibits, petitioner(s) will, at 9:30 AM on the 5th

day of _June_____, 2024, [return date] at the Courthouse at 60 Centre Street, New

York, N.Y. in the Motion Submission Part Courtroom, Room 130, request that this court issue a

judgment, pursuant to the Civil Practice Law and Rules (CPLR), granting the following relief to the

petitioner(s):            On 9·30·23 I recieved the NYS DHR desier.

[briefly describe what you are asking the Court to do] Review Agency (NYSDHR) decision
as it was arbitrary and capricious in its denial of relief. Exhibit
B proves I was considered permant in title by DCAS and
NYS Executive orders 202.8 & 202.67 (supported by case law
Foy V. State of NY (2021) & Morse V. lovelife TV (2020, NY) tolled my timeline to
and such other and further relief as to this Court may seem just and proper. request meeting to Soute
the requested relief on all of my complaints. of limitations, As it is 11/27
Dated: _11·27_, 2023      Respectfully submitted, I am within the 23
                                                    day statute to file
_Taren Payne_                                       this article
2289 5th Avenue,                                    egitition.
New York, NY 10037                                  Ts W/i
814 580 8565                                        60, days
                          Petitioner                0 + Senvie

To: Respondent(s)         [your name, address, telephone number]
NYS Division of Human Rights
One Fordham Plaza, 4th fl.
Bronx, NY 10458
1 844 862 8703
[name, address, telephone number]

[Print in **black** ink all areas in bold letters]

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------x

In the Matter of the Application of

_____Taren Payne,_____,

[fill in name(s)]                              Petitioner(s),

- against-

NYS Division of Human Rights
NYC Administration for Childrens services

_____,

[fill in name(s)]                              Respondent(s).

------------------------------------------------------------x

Index Number

_101256/2023_

VERIFIED PETITION

TO THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK:

The petition of [your name] _Taren Payne,_ respectfully
shows to this court as follows:

1. Petitioner resides at [your address] _2289 5th Avenue,_
_New York, NY 10037_

2. The respondent(s) is / are [identify the respondent(s)] _NYS Division of_
_Human Rights_

_____

_____

3. [Describe what you are requesting and the reasons therefor. Add more pages if needed. If you are appealing the decision of a government agency, give the date and outcome of the final determination. Explain why this Court should reverse that decision.] Article 78: Mandamus to Review of adverse decision of case 10226044 provided to me (via email) on 9.30.23. The reasons for denial of relief here, that I was a nonpermanent employee, and my requests here time barred. NYCDCAS is the agency assigned the task of determining NYC Civil Servant status. Exhibit B is an email from them citing me as permanent in title. NYS Executive orders 202.8 and 202.67, supported by case law Foy v State of NY et (2021) and Morse v. loreite TY (2020) provided tal of 228 days for the requested relief on all requests. The DHR decision

SpecialProceeding - 1/2014

did not Consider the decision of the agency that decides NYC permancy, nor did it apply the toll of the excepted executive order, which puts me within statute of limitation for my complaint to be fully considered As it is 11.27.23 I am within 60 days statute to file this Article 78 petition as its w/t 60 days of Service.

4. Attached as exhibits are copies of all relevant documents. [Attach the decision you are asking the court to reverse as Exhibit A.  Attach any other documents as Exhibit B, Exhibit C, and so on.  Identify each exhibit and explain how it supports your position  List additional Exhibits on a separate page.]

Exhibit A - Determination and order after Investigation NYSDHR Case 10220044

Exhibit B - Email from DCAS stating I was permanent in Civil Service Title 40S/JC

Exhibit C - NYS Executive Orders 202.8 and 202.67

Exhibit D - Fay V State of NY (2021)

Exhibit E - Mase V Lovelive TV (2020)

5.  A prior application has not / has [circle one] been made for the relief now requested. [If you made this application before in this or any other court, describe where, when, the result and why you are making it again.]

2

Exhibit: Personnel Rules and Regulations of the City of New York

WHEREFORE, your deponent respectfully requests that this Court [briefly describe what you are requesting] Article 78 Mandamus to review of adverse decision of Case 1022004. This is within 60 days of 9-27-23 service.

and grant such other and further relief as may to the court seem just and proper.

11/27, 20 23
[date signed]

Petitioner [sign your name]

Taren Payne
[print your name]

2289 5th Avenue, 13D
New York, NY 10037
814 580 8565
[your address and telephone no.]

**VERIFICATION**

STATE OF NEW YORK
COUNTY OF NEW YORK : ss:

Taren Payne [your name], being duly sworn, deposes and says that: I am the petitioner in this proceeding; I have read the foregoing petition and know the contents thereof; the same are true to my own knowledge, except as to matters therein stated to be alleged on information and belief; and as to those matters I believe them to be true.

Sworn to before me this

27 day of November, 20 23

Notary Public

Petitioner [sign your name before a Notary]

Taren Payne
[print your name]

DANIEL T. CHENG
Notary Public, State of New York
Reg. No. 04CH0015293
Qualified in New York County
Commission Expires Oct. 30, 2027

3

SpecialProceeding - 1/2014

# REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev. 02/01/2022)

**SUPREME** COURT, COUNTY OF __NY__

Index No: __101255/2023__ Date Index Issued: __11/27/2023__

| For Court Use Only: |
| --- |
| IAS Entry Date |
| Judge Assigned |
| RJI Filed Date |

**CAPTION**    Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

Taren Payne

Plaintiff(s)/Petitioner(s)

-against-

NYS Division of Human Rights, & NYC Administration for Childrens Services

Defendant(s)/Respondent(s)

**NATURE OF ACTION OR PROCEEDING**   Check only one box and specify where indicated.

**COMMERICIAL**
- ○ Business Entity (Includes corporations, partnerships, LLCs, LLPs, etc.)
- ○ Contract
- ○ Insurance (where insurance company is a party, except arbitration)
- ○ UCC (includes sales and negotiable instruments)
- ○ Other Commercial (specify): _____
  - *NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**TORTS**
- ○ Asbestos
- ○ Child Victims Act
- ○ Environmental (specify): _____
- ○ Medical, Dental or Podiatric Malpractice
- ○ Motor Vehicle
- ○ Products Liability (specify): _____
- ○ Other Negligence (specify): _____
- ○ Other Professional Malpractice (specify): _____
- ○ Other Tort (specify): _____

**SPECIAL PROCEEDINGS**
- ○ Child-Parent Security Act (specify): ○Assisted Reproduction ○Surrogacy Agreement
- ○ CPLR Article 75 – Arbitration      [see NOTE in COMMERCIAL section]
- ● CPLR Article 78 – Proceeding against a Body or Officer
- ○ Election Law
- ○ Extreme Risk Protection Order
- ○ MHL Article 9.60 – Kendra's Law
- ○ MHL Article 10 – Sex Offender Confinement (specify): ○ Initial ○ Review
- ○ MHL Article 81 (Guardianship)
- ○ Other Mental Hygiene (specify): _____
- ○ Other Special Proceeding (specify): _____

**MATRIMONIAL**
- ○ Contested
  - *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI ADDENDUM (UCS-840M).*
  - *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**REAL PROPERTY**    Specify how many properties the application includes: ___
- ○ Condemnation
- ○ Mortgage Foreclosure (specify): ○ Residential ○ Commercial
  - Property Address: _____
  - *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*
- ○ Partition
  - *NOTE: Complete and attach the PARTITION RJI ADDENDUM (UCS-840P).*
- ○ Tax Certiorari (specify): Section: ___ Block: ___ Lot: ___
- ○ Tax Foreclosure
- ○ Other Real Property (specify): _____

**OTHER MATTERS**
- ○ Certificate of Incorporation/Dissolution [see NOTE in COMMERCIAL section]
- ○ Emergency Medical Treatment
- ○ Habeas Corpus
- ○ Local Court Appeal
- ○ Mechanic's Lien
- ○ Name Change/Sex Designation Change
- ○ Pistol Permit Revocation Hearing
- ○ Sale or Finance of Religious/Not-for-Profit Property
- ○ Other (specify): _____

**STATUS OF ACTION OR PROCEEDING**    Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
| --- | --- | --- | --- |
| Has a summons and complaint or summons with notice been filed? | ○ | ○ | If yes, date filed: _____ |
| Has a summons and complaint or summons with notice been served? | ○ | ○ | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | ○ | ○ | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION**    Check one box only and enter additional information where indicated.

- ○ Infant's Compromise
- ○ Extreme Risk Protection Order Application
- ○ Note of Issue/Certificate of Readiness
- ○ Notice of Medical, Dental or Podiatric Malpractice   Date Issue Joined: _____
- ○ Notice of Motion   Relief Requested: _____ Return Date: _____
- ● Notice of Petition   Relief Requested: *Mandamus of review* Return Date: 6/5/24
- ○ Order to Show Cause   Relief Requested: _____ Return Date: _____
- ○ Other Ex Parte Application   Relief Requested: _____
- ○ Partition Settlement Conference
- ○ Poor Person Application
- ○ Request for Preliminary Conference
- ○ Residential Mortgage Foreclosure Settlement Conference
- ○ Writ of Habeas Corpus
- ○ Other (specify): _____

**RELATED CASES**   List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the RJI ADDENDUM (UCS-840A).

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**PARTIES**   For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the RJI ADDENDUM (UCS-840A).

| Un-Rep | Parties List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined For each defendant, indicate if issue has been joined. | Insurance Carriers For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☑ | Name: Taren Payne Role(s): Plantiff | Unrepresented/pro se 2289 5th Avenue 13D New York, NY 10037 | ○ YES ● NO | |
| ☐ | Name: NYS Division of Role(s): Human Rights/DHR Defendant/Respondant | NYS division of human Rights One Fordham Plaza 4thA. Bx, NY 10450 | ○ YES ● NO | |
| ☐ | Name: NYC Administration Role(s): for Childrens Services Defendand | ACS, 150 William St, NY, NY 10038 | ○ YES ● NO | |
| ☐ | Name: Role(s): | | ○ YES ○ NO | |
| ☐ | Name: Role(s): | | ○ YES ○ NO | |
| ☐ | Name: Role(s): | | ○ YES ○ NO | |
| ☐ | Name: Role(s): | | ○ YES ○ NO | |
| ☐ | Name: Role(s): | | ○ YES ○ NO | |
| ☐ | Name: Role(s): | | ○ YES ○ NO | |
| ☐ | Name: Role(s): | | ○ YES ○ NO | |
| ☐ | Name: Role(s): | | ○ YES ○ NO | |
| ☐ | Name: Role(s): | | ○ YES ○ NO | |
| ☐ | Name: Role(s): | | ○ YES ○ NO | |
| ☐ | Name: Role(s): | | ○ YES ○ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated: 11/27/23

_____
Signature

_____
Attorney Registration Number

Taren Payne
Print Name

Case 1:24-cv-03860-LTS   Document 1   Filed 05/13/24   Page 19 of 42

************NOTICE OF ENTRY****************/****

Sir/Madam:

Please take notice that the within is a (certified) true copy of a

_____ duly entered in the office of the clerk of

the within named court on the ___ day of _____, 20___

Dated:

Attorney for:

Yours, etc.

Office and Post

Office Address

To:

Attorney(s) for _____

************NOTICE OF SETTLEMENT****************

Sir/Madam:

Please take notice that an _____

of which the within is a true copy will be presented for settlement

to the Hon. _____, one of the Justices

of the within court, at _____, on

_____, 20___ at _____ AM/PM.

Dated: _____, 20___     Yours, etc.

Presenting Party _____

To:

Attorney(s) for

---

INDEX NUMBER _101255/2023_

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

_Taren Payne_

- against -

Plaintiff / Petitioner,

_NYS Division of Human Rights_
_(NYS DHR) & NYC Administration for_
_Childrens Services ACS_

Defendant / Respondent.

To the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of these papers and the contentions therein are not frivolous as defined in subsection (c) of section 130 1.1 of the Rules of the Chief Administrator (22NYCRR).

Sign Name: _Taren Payne_

Print Name: _Taren Payne_

Address: _2289 5th Avenue 13D_
_NY, NY 10037_

Telephone: _914 580 8565_

Service of a copy of the within is hereby admitted

Dated: _____, 20___

Attorney for _____

SpecialProceeding - 1/2014



**Division of
Human Rights**

*Exhibit A*

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>TAREN P. PAYNE,<br>                        Complainant,<br>          v.<br><br>CITY OF NEW YORK, ADMINISTRATION FOR CHILDREN'S SERVICES,<br>                      Respondent. | DETERMINATION AND ORDER AFTER INVESTIGATION<br><br>Case No.<br>10220044 |

Federal Charge No. 16GC204351

On 9/17/2022, Taren P. Payne filed a complaint with the New York State Division of Human Rights ("Division") charging the above-named respondent with an unlawful discriminatory practice relating to employment because of disability, opposed discrimination/retaliation in violation of N.Y. Exec. Law, art. 15 (Human Rights Law).

After investigation, and following opportunity for review of related information and evidence by the named parties, the Division has determined that there is NO PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of. This determination is based on the following:

The evidence in the record does not support a probable cause finding of disability discrimination or retaliation. The record shows that Complainant was not a permanent employee when her employment was terminated in 2019. Complainant's claim that Respondent denied her benefits and opportunities available to an employee designated as permanent falls outside the review power of this agency. Complainant's claim that Respondent engaged in disability discrimination when Respondent extended her probation period in 2019 due to Complainant's accommodation request is time-barred. Further, Complainant has not demonstrated a causal connection between the more recent denial of benefits and opportunities of a permanent employee and her 2019 EEOC complaint filing against Respondent for disability discrimination.

The complaint is therefore ordered dismissed and the file is closed.

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and Petition within sixty (60) days after service of this Determination. A copy of this Notice and Petition must also be served on all parties including General Counsel, State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458. DO NOT FILE THE ORIGINAL NOTICE AND PETITION WITH THE STATE DIVISION OF HUMAN RIGHTS.

Your charge was also filed under Title VII of the Civil Rights Act of 1964. Your charge was also filed under the Americans with Disabilities Act (ADA). Enforcement of the aforementioned law(s) is the responsibility of the U.S. Equal Employment Opportunity Commission (EEOC). You have the right to request a review by EEOC of this action. To secure review, you must request it in writing, within 15 days of your receipt of this letter, by writing to EEOC, New York District Office, 33 Whitehall Street, 5th Floor, New York, New York 10004-2112. Otherwise, EEOC will generally adopt our action in your case.

Dated:     September 26, 2023
           White Plains, New York

STATE DIVISION OF HUMAN RIGHTS

By:     _____
        Linda Fenstermaker
        Regional Director

## Payne, Taren P (ACS)

| | |
|---|---|
| **From:** | Siu Cheng (DCAS) on behalf of CitywideRecruitment (DCAS) |
| **Sent:** | Wednesday, May 22, 2019 5:21 PM |
| **To:** | t.payne@live.com; Payne, Taren P (ACS) |
| **Subject:** | 55-a Inquiry |

*Exhibit B*

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Good afternoon,

I apologize for the delay in responding to your inquiry.

According to your personnel record, you are currently serving as a permanent Youth Development Specialist. Therefore, you are not eligible to apply for the 55-a/non-competitive status in your current role.

If you are interested in applying for the 55-a status, you must be serving as a provisional employee in a competitive position.

If you have any additional questions, please feel free to reply back. Thank you.

**New York City's 55-a Program**
**P: (212) 386-0257 | CitywideRecruitment@dcas.nyc.gov**

 **DCAS**
**Citywide Administrative Services**
**Follow us on:**

**Website / Subscribe to Exams Newsletter**

Confidentiality Notice: This e-mail communication, and any attachments, contains confidential and privileged information for the exclusive use of the recipient(s) named above. If you are not an intended recipient, or the employee or agent responsible to deliver it to an intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify me immediately by replying to this message and delete this communication from your computer. Thank you.



*Exhibit CA*

No. 202.8

## E X E C U T I V E   O R D E R

### Continuing Temporary Suspension and Modification of Laws
### Relating to the Disaster Emergency

WHEREAS, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

WHEREAS, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

WHEREAS, in order to facilitate the most timely and effective response to the COVID-19 emergency disaster, it is critical for New York State to be able to act quickly to gather, coordinate, and deploy goods, services, professionals, and volunteers of all kinds; and

NOW, THEREFORE, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 19, 2020 the following:

- In accordance with the directive of the Chief Judge of the State to limit court operations to essential matters during the pendency of the COVID-19 health crisis, any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, the surrogate's court procedure act, and the uniform court acts, or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby tolled from the date of this executive order until April 19, 2020;
- Subdivision 1 of Section 503 of the Vehicle and Traffic Law, to the extent that it provides for a period of validity and expiration of a driver's license, in order to extend for the duration of this executive order the validity of driver's licenses that expire on or after March 1, 2020;
- Subdivision 1 of Section 491 of the Vehicle and Traffic Law, to the extent that it provides for a period of validity and expiration of a non-driver identification card, in order to extend for the duration of this executive order the validity of non-driver identification cards that expire on or after March 1, 2020;
- Sections 401, 410, 2222, 2251, 2261, and 2282(4) of the Vehicle and Traffic law, to the extent that it provides for a period of validity and expiration of a registration certificate or number plate for a motor vehicle or trailer, a motorcycle, a snowmobile, a vessel, a limited use vehicle, and an all-terrain vehicle, respectively, in order to extend for the duration of this executive order the validity of such registration certificate or number plate that expires on or after March 1, 2020;
- Section 420-a of the vehicle and traffic law to the extent that it provides an expiration for temporary registration documents issued by auto dealers to extend the validity of such during the duration of this executive order.
- Subsection (a) of Section 602 and subsections (a) and (b) of Section 605 of the Business Corporation Law, to the extent they require meetings of shareholders to be noticed and held at a physical location.

NOW, **THEREFORE**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of Executive Order through April 19, 2020:

- The provisions of Executive Order 202.6 are hereby modified to read as follows: Effective on March 22 at 8 p.m.: All businesses and not-for-profit entities in the state shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize. Each employer shall reduce the in-person workforce at any work locations by 100% no later than March 22 at 8 p.m. Any essential business or entity providing essential services or functions shall not be subject to the in-person restrictions. An entity providing essential services or functions whether to an essential business or a non-essential business shall not be subjected to the in-person work restriction, but may operate at the level necessary to provide such service or function. Any business violating the above order shall be subject to enforcement as if this were a violation of an order pursuant to section 12 of the Public Health Law.
- There shall be no enforcement of either an eviction of any tenant residential or commercial, or a foreclosure of any residential or commercial property for a period of ninety days.
- Effective at 8 p.m. March 20, any appointment that is in-person at any state or county department of motor vehicles is cancelled, and until further notice, only on-line transactions will be permitted.
- The authority of the Commissioner of Taxation and Finance to abate late filing and payment penalties pursuant to section 1145 of the Tax Law is hereby expanded to also authorize abatement of interest, for a period of 60 days for a taxpayers who are required to file returns and remit sales and use taxes by March 20, 2020, for the sales tax quarterly period that ended February 29, 2020.



GIVEN  under my hand and the Privy Seal of the

State in the City of Albany this

twentieth day of March in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



*Exhibit CB*

No. 202.67

## EXECUTIVE ORDER

### Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency

WHEREAS, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

WHEREAS, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

NOW, THEREFORE, I, ANDREW M. CUOMO, Governor of the State of New York, by virtue of the authority vested in me by the Constitution and the Laws of the State of New York, do hereby find that a disaster continues to exist for which affected state agencies and local governments are unable to respond adequately. Therefore, pursuant to the authority vested in me by the Constitution of the State of New York and Section 28 of Article 2-B of the Executive Law, I hereby continue the declaration of the State Disaster Emergency effective March 7, 2020, as set forth in Executive Order 202. This Executive order shall remain in effect until November 3, 2020.

IN ADDITION, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, or to provide any directive necessary to respond to the disaster, do hereby continue the suspensions and modifications of law, and any directives not superseded by a subsequent directive contained in Executive Orders 202 up to and including 202.21, and 202.27, 202.28, 202.29, 202.30, 202.38, 202.39, 202.40, 202.48, 202.49, 202.50, 202.55 and 202.55.1, as extended, and Executive Order 202.60 for another thirty days through November 3, 2020, except:

- Subdivision 1 of Section 491 of the Vehicle and Traffic law, to the extent that it provides for a period of validity and expiration of a non-driver identification card, shall no longer be suspended or modified as of November 3, 2020;

- Sections 401, 410, 2222, 2251, 2251, and 2282(4) of the Vehicle and Traffic law, to the extent that it provides for a period of validity and expiration of a registration certificate or number plate for a motor vehicle or trailer, a motorcycle, a snowmobile, a vessel, a limited use vehicle, and an all-terrain vehicle, shall no longer be suspended or modified as of November 3, 2020;

- Section 420-a of the Vehicle and Traffic law, to the extent that it provides an expiration for temporary registration documents issued by auto dealers shall no longer be suspended or modified as of November 3, 2020; and

- The suspension in Executive Order 202.8, as modified and extended in subsequent Executive Orders, that tolled any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding as prescribed by the procedural laws of the state, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, the surrogate's court procedure act, and the uniform court acts, or by any statute, local law, ordinance, order, rule,

or regulation, or part thereof, is hereby continued, as modified by prior executive orders, provided however, for any civil case, such suspension is only effective until November 3, 2020, and after such date any such time limit will no longer be tolled, and provided further:

o   The suspension and modification of Section 30.30 of the criminal procedure law, as continued and modified in EO 202.60, is hereby no longer in effect, except for felony charges entered in the counties of New York, Kings, Queens, Bronx, and Richmond, where such suspension and modification continues to be effective through October 19, 2020; thereafter for these named counties the suspension is no longer effective on such date or upon the defendant's arraignment on an indictment, whichever is later, for indicted felony matters, otherwise for these named counties the suspension and modification of Section 30.30 of the criminal procedure law for all criminal actions proceeding on the basis of a felony complaint shall no longer be effective, irrespective, 90 days from the signing of this Executive order on January 2, 2021.



GIVEN under my hand and the Privy Seal of the State in the City of Albany this fourth day of October in the year two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor

| |
| --- |
| Foy v State of New York |
| 2021 NY Slip Op 21047 [71 Misc 3d 605] |
| February 16, 2021 |
| Sise, A.P.J. |
| Court of Claims |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| As corrected through Wednesday, May 19, 2021 |

[*1]

| |
| --- |
| John Foy, Claimant, |
| v |
| State of New York,[FN1] Defendant. (Claim No. 135085.) |

Court of Claims, February 16, 2021

*Exhibit D*

APPEARANCES OF COUNSEL

*Letitia James, Attorney General (Ellen S. Mendelson* of counsel), for defendant.

*John Foy,* claimant pro se

{**71 Misc 3d at 606} OPINION OF THE COURT

Richard E. Sise, A.P.J.

Claimant brought this action seeking to be reinstated to his position as a New York State Court Officer and for a declaratory judgment that a stipulation he signed regarding the terms of his continued employment is void. He also requests money damages for his alleged wrongful termination. Defendant has moved to dismiss the claim on the grounds that the claim was not timely filed or served, and that the court lacks jurisdiction to issue the declaratory judgment sought here or to order that claimant be reinstated to his position.

Claimant alleges that on February 7, 2019, he entered into a stipulation with the Office of Court Administration which provided that he could be fired immediately if he was late for work more than three times in any consecutive four-week period, or was late for work more than a total of 30 minutes in any consecutive four-week period, or if he reported to his assigned post late more than three times in any consecutive four-week period. According to claimant, he was called [*2]into a meeting on December 10, 2019. The purpose of the meeting is not made clear in the claim but involved some discussion of lateness issues regarding claimant. Claimant alleges that sometime prior to the meeting he had made an inquiry about an incident report in which he was named. He asserts that the report was falsified and that he was attempting to have the report corrected. He further contends that the December 10th meeting was provoked by his efforts regarding that incident report. As alleged in the claim, his termination on February 18, 2020, was done in bad faith and under false pretenses. The claim also makes a vague reference to a decision made by a Judge Silver and argues that the decision was made without adequate consideration of the circumstances surrounding claimant's termination. {**71 Misc 3d at 607}

As defendant correctly argues, the court does not have jurisdiction to make a declaratory judgment with respect to the stipulation regarding claimant's continued employment (*see* Court of Claims Act § 9 [9-a] [power to make a declaratory judgment limited to controversies involving the obligation of an insurer to indemnify or defend a defendant in this court]; *cf.* CPLR 3001 [power of Supreme Court to render a declaratory judgment]). Defendant also correctly argues that this court does not have the power to order such equitable relief as reinstatement (*Koerner v State of N.Y., Pilgrim Psychiatric Ctr.,* 62 NY2d 442 [1984]).

Whether the claim was timely filed and served depends on a number of considerations: the date of accrual, the time within which the claim must be filed and served, the dates of filing and service and any tolls or suspensions that may apply. The latest date for any event alleged in the claim is February 18, 2020, the date on which claimant was terminated, and, because the date when the claim arose must be alleged in the claim (Court of Claims Act § 11 [b]), this represents the latest possible date of accrual. Under Court of Claims Act § 10 the claim for wrongful termination, to the extent one exists here (*see Piro v Bowen,* 76 AD2d 392, 397 [2d Dept 1980] [the general rule is that a discharged public employee cannot recover unpaid salary until they prove their right to the position from which they were discharged]), had to be filed and served within 90 days of accrual (*see Sager v County of Sullivan,* 145 AD3d 1175 [3d Dept 2016] [treating claim for wrongful termination based on retaliatory action as a tort]). The claim, however, was not filed until July 21, 2020, and not served until November 17, 2020, which is nearly nine months after the February 18, 2020 date of accrual. Thus, the claim was not served within the period of time prescribed by section 10.

Claimant argues, however, that he has been afforded additional time to file and serve his claim by Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8) issued on March 20, 2020, by Governor Cuomo in response to the COVID-19 public health emergency. The executive order, extended seven times and to the extent it applies here, ultimately expired on November 3, 2020,[FN2] was issued pursuant to authority vested in the Governor by Executive Law § 29-a. The executive order provides in part that {**71 Misc 3d at 608}

"any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, [*3]the surrogate's court procedure act, and the uniform court acts, or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby tolled from the date of this executive order until April 19, 2020."

The executive order makes pointed reference to the Court of Claims Act and is clear in stating that any specific time limit for the commencement of any legal action is tolled. A toll suspends the running of the applicable period of limitation for a finite time period, in this instance, 30 days,[FN3] and "the period of the toll is excluded from the calculation of the time in which the [claimant] can commence an action." (*Chavez v Occidental Chem. Corp.,* 35 NY3d 492, 505 n 8 [2020].) The amount of time covered by the original executive order and all extensions is 228 days. The number of days between when the claim accrued, February 18, 2020, and when claimant accomplished service on November 17, 2020, is 273 days. Subtracting the period of the toll, 228 days, from the period of time between accrual and service, 273 days, results in a difference of 45 days. Therefore, on November 17, 2020, 45 days remained before the expiration of time to serve and file the claim.

While defendant inexplicably failed to advise the court of Executive Order 202.8 and then, once raised by claimant, neglected to address its impact here, a number of commentators have noted that the authority afforded the Governor by Executive Law § 29-a (1) is to "temporarily suspend any statute" and that the statute does not specifically authorize a toll and that a suspension of a period of limitation is fundamentally different from a toll. Unlike a toll, a suspension does not exclude its effective duration from the calculation of the relevant time period. Rather, it simply delays expiration of the time period until the end date of the suspension. Thus, if the executive orders discussed above worked a suspension rather than a toll, {**71 Misc 3d at 609} any time period affected by those orders expired on November 3, 2020. As such, the claim here, served on November 17, 2020, would be untimely.

Executive Order 202.8, as noted, provides for a toll, as do Executive Order 202.67 and Executive Order 202.72, the last two executive orders addressed to time limits for the commencement, filing or service of a legal action. Thus, it is clear that a toll, and not a suspension, was intended and the question becomes whether the statute authorizes a toll. The primary consideration in the construction of a statute is to ascertain and give effect to the intention of the legislature (McKinney's Cons Laws of NY, Book 1, Statutes § 92). The legislative intent is to be ascertained from the words and language used and the statutory language is generally construed according to its natural and most obvious sense without resorting to an artificial or forced construction. (McKinney's

Cons Laws of NY, Book 1, Statutes § 94.) Focusing on the phrase "suspend any statute" in Executive Law § 29-a (1), the statute demonstrates a far reaching application. Considering that the legislature extended the authority for the Governor to suspend to "any statute," that power should not be read in the narrow context of statutes involving time limitations where a "suspension" represents a term of art. Moreover, a statute must be construed as a whole reading the various sections together to determine [*4]legislative intent (*Matter of Plastic Surgery Group, P.C. v Comptroller of the State of N.Y.*, 34 NY3d 507, 516 [2019]; *Loehr v New York State Unified Ct. Sys.*, 150 AD3d 716 [2d Dept 2017]). In that regard, consideration must be given to the language in Executive Law § 29-a (2) which provides that "[s]uspensions pursuant to subdivision one of this section shall be subject to the following standards and limits" and in paragraph (d) of subdivision (2), which provides that the implementing executive order "may provide for the alteration or modification of the requirements of such statute, local law, ordinance, order, rule or regulation suspended, and may include other terms and conditions." The language in subdivision (2), paragraph (d) makes clear that something other than a straightforward suspension of a statute is authorized. The Governor is also permitted to modify the terms and conditions of a statute. Here, Executive Order 202.8, and its successors, can reasonably be characterized as implementing a temporary alteration of the timely filing and service provisions in Court of {**71 Misc 3d at 610}Claims Act § 10, a modification. As such, the tolls were authorized and the claim is not untimely.

## Footnotes

Footnote 1:The caption of the action has been amended to reflect the only proper defendant.

Footnote 2:The extensions of Executive Order 202.8 are found in Executive Order (A. Cuomo) Nos. 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, and 202.67 (9 NYCRR 8.202.14, 8.202.28, 8.202.38, 8.202.48, 8.202.55, 8.202.60, 8.202.67). Executive Order (A. Cuomo) No. 202.72 (9 NYCRR 8.202.72) announced that the tolls were no longer in effect as of November 4, 2020.

Footnote 3:Executive Law § 29-a limits the duration of directives authorized by its provisions to 30 days, but provides that the Governor may extend the directive for additional periods not to exceed 30 days each.

*1]

A

v

Morse v LoveLive TV US, Inc.

2020 NY Slip Op 51481(U) [69 Misc 3d 1224(A)]

Decided on December 15, 2020

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 15, 2020

Supreme Court, New York County

*Exhibit E*

Elisabeth Morse, Plaintiff,

against

LoveLive TV US, Inc., RICHARD COHEN, Defendant.

50110/2017

Plaintiff:
Elizabeth Avnet Morse, Esq.

Defendants:
Wallace Neel, Esq.
Blue Hill Plaza Lobby Level # 1509, Pearl River, NJ 10965
By: Wallace B. Neel, Esq.

Robert R. Reed, J.

In this breach of contract action, plaintiff Elisabeth Morse, acting pro se, alleges that defendant LoveLive TV US Inc. (LoveLive US), the wholly owned subsidiary of defendant LoveLive TV Limited (LoveLive UK), terminated her employment and failed to award her the severance package provided for in her employment agreement. Plaintiff further alleges that LoveLive US informally dissolved without accounting to creditors, including plaintiff, and that defendant Richard Cohen (Cohen), the chief executive officer and sole director of LoveLive US, remains personally liable to plaintiff for the failure to account to creditors, pursuant to New York Business Corporation Law ("BCL") § 1006, due to the informal dissolution of LoveLive US.

Motion sequence nos. 003 and 004 are consolidated for disposition. In motion sequence no. 003, plaintiff moves, pursuant to CPLR 3124, for an order compelling discovery or, in the alternative, pursuant to CPLR 3126, for an order striking defendants' answer for failure to provide discovery.

In motion sequence no. 004, defendants LoveLive US and Cohen move: (1) pursuant to CPLR 3211 (a) (8), for an order dismissing all claims against each of them for lack of personal jurisdiction; and (2) pursuant to CPLR 3211 (a) (7), dismissing all claims against each of them with prejudice, for failure to state a claim.

For the reasons set forth below, defendants' motion to dismiss is denied, and plaintiff's motion to compel discovery is granted.

*FACTS*

*Plaintiff's Employment*

Accepting the allegations of the amended complaint as true (*Leon v Martinez*, 84 NY2d 83, 88 [1994]), the following facts emerge: LoveLive US was an agency producing audio-visual content. On July 1, 2016, plaintiff and LoveLive US entered into an employment agreement (the Employment Agreement [NYSCEF Doc No. 88]) for plaintiff's employment as Senior Vice President of Business Affairs and Strategic Development (amended complaint [NYSCEF Doc No. 85], ¶ 14). The Employment Agreement provided that, should plaintiff and defendants extend plaintiff's employment with LoveLive US through 2017, plaintiff would receive an increase in salary of $50,000 in January of 2017, and a bonus of 20% payable in the next calendar year (Employment Agreement at 1).

The Employment Agreement further states that:

"If by the end of 2016, either you or the Company decide not to extend to 2017, and assuming targets are met, you will be granted a lump sum payment equivalent to 20% of annual 2016 salary (to be paid in early 2017)"

*id.*). Plaintiff refers to this lump sum payment as the "Severance Amount."

Plaintiff alleges that, during negotiation of the Employment Agreement, she and LoveLive US agreed that "targets" meant satisfactory performance by plaintiff of her services for LoveLive US (amended complaint, ¶17). Plaintiff agreed to accept the Severance Amount provision of the Employment Agreement in lieu of a "market" salary (*id.*, ¶ 19).

Plaintiff commenced employment with LoveLive US on July 18, 2016, and provided legal, business affairs, and strategic development services to LoveLive US (amended complaint, ¶¶ 20-21). Plaintiff alleges that she consistently received positive evaluations and feedback from her supervisor, LoveLive's Chief Operating Officer, Marisa Bangash, and that she met all the "prerequisite (sic) targets" for LoveLive US necessary for the payment of the Severance Amount [*2](*id.*, ¶¶ 22-23).

On November 15, 2016, Bangash informed plaintiff that, due to Lovelive US's financial difficulties, LoveLive US would not extend plaintiff's employment into 2017 (*id.*, ¶ 24). Bangash further informed plaintiff that LoveLive US was "downsizing," and that plaintiff's position would not be replaced (*id.*, ¶ 25). Plaintiff alleges that Bangash told her that she had met her targets, and

would be entitled to the Severance Amount (*id.*, ¶ 26). On November 25, 2016, Cohen stated in an email provided to Bangash that plaintiff was owed the Severance Amount, stating: "It seems perfectly obvious to me that the 20% bonus is due, as we have no intention of making performance an issue" (*id.*, ¶ 27; *see* exhibit D [NYSCEF Doc No. 89]).

On December 2, 2016, LoveLive US ceased doing all business (*id.*, ¶ 28). On December 3, 2016, LoveLive UK, LoveLive US's parent company, terminated the employment of all LoveLive US employees, including plaintiff (*id.*, ¶ 29).

LoveLive US has not filed for bankruptcy, nor has it assigned its assets to a third-party fiduciary for the benefit of its creditors (*id.*, ¶ 31). LoveLive US has not sent any formal communication to its creditors accounting for or regarding the disposition of LoveLive US assets (*id.*, ¶ 32). According to plaintiff, LoveLive US has paid other former LoveLive employees amounts they were contractually owed upon termination (*id.*, ¶ 33).

On December 27, 2016, plaintiff sent a letter to James Holland (Holland), LoveLive's Chief Financial Officer, and inquired whether LoveLive US had filed for bankruptcy (*id.*, ¶ 34; *see* exhibit F [NYSCEF Doc No. 91]). In response, Holland informed plaintiff that LoveLive US "ceased to trade on 2nd December 2016 pursuant to a resolution of the directors," but had "decided against bankruptcy" (*id.*, ¶ 34; *see* exhibit E [NYSCEF Doc No. 90]).

On February 10, 2017, defendants' attorneys sent a letter to plaintiff's attorney stating that defendants had no intention of paying plaintiff the Severance Amount, or any other compensation (*id.*, ¶ 37; *see* exhibit H [NYSCEF Doc No. 93]).

Cohen is the sole registered and active director of Lovelive US (*id.*, ¶ 39). Plaintiff alleges that all material business decisions of LoveLive US are subject to Cohen's approval (*id.*, ¶ 40).

Plaintiff asserts that, under New York law, where it is impossible or futile to obtain a judgment against a defunct corporation that has defaulted on debts by "informal dissolution," creditors can maintain an action directly against the directors or shareholders, and that under BCL § 1006, directors incur derivative personal liability when they undertake to divest a corporation of all its property. Plaintiff alleges that defendants' counsel has confirmed on the record that LoveLive US has defaulted against creditors by informal dissolution, stating that LoveLive US "went bust," is a "now-defunct New York company," and an "out-of-business enterprise" (*id.*, ¶ 44; *see* exhibit M, defendant's memorandum of law at 1, 6 [NYSEC Doc No. 97]; exhibit N, 8/8/17 transcript of oral argument in *TV Tech Managers, Inc. v Cohen*, Index No. EF001342-2017 [Sup Ct, Orange County, Civil Term] [NYSCEF Doc No. 98]).

Plaintiff further alleges that, on December 8, 2016, after defaulting on creditors by informal dissolution, LoveLive US disbursed cash assets to select employees as payroll compensation (*id.*, ¶ 45; *see* exhibit O [NYSCEF Doc No. 99]). On or about December 2016, Gemma Rowe Johnson (Johnson) was contracted by LoveLive UK to liquidate LoveLive US's material assets (*id.*, ¶ 45). In Holland's January 4, 2017 email to plaintiff, Holland stated that "[LoveLive US has] made payments to staff in respect of accrued PTO and salary to December 2, 2016. We further understand that this has exhausted the company's cash on hand. The [*3]contractor is in the process of liquidating the remaining assets of the company " (*see id.*, exhibit E [NYSCEF Doc No. 90; *see also* exhibit P, 1/18/17 Rowe email to Morse [NYSCEF Doc No. 100] ["I have been contracted to perform some administrative tasks related to the liquidation"]).

Plaintiff alleges that, in addition to cash, LoveLive US transferred and/or informally liquidated various non-cash assets by informal dissolution, including office equipment, computer equipment, and kitchen equipment (*id.*, ¶ 49). On March 5, 2020, during oral argument, defense counsel confirmed that no formal notice of dissolution or accounting was ever provided to creditors of LoveLive US (*id.*, ¶ 50; *see* 3/5/20 transcript of oral argument at 9 [NYSCEF Doc No 109]).

**Procedural History**

**1. Defendants' First Motion to Dismiss**

On March 16, 2017, plaintiff filed the initial complaint, seeking payment of the Severance Amount. Plaintiff sought to pierce the corporate veil and hold both Cohen and LoveLive UK liable for the contractual obligations of LoveLive US, its subsidiary, by alleging that LoveLive UK and Cohen were alter egos of LoveLive US.

On June 22, 2017, defendants filed a motion to dismiss the initial complaint as against them for failure to state a claim, on the ground that the contractual provision upon which plaintiff sues is conditional, and that plaintiff failed to satisfy the condition precedent — i.e., that "targets" were "met" — prior to suing. Cohen and LoveLive UK also sought dismissal as against them for lack of personal jurisdiction. In opposition to the motion (NYSCEF Doc No. 19), plaintiff clarified that her cause of action against Cohen "is dependent not on [a] veil piercing doctrine, but on the informal dissolution of LoveLive US" pursuant to BCL § 1006 (b) (plaintiff's opposition at 6).

By decision dated August 1, 2019 (NYSCEF Doc No. 36), this court granted defendants' motion to dismiss with respect to LoveLive UK, finding that plaintiff had failed to demonstrate the necessary elements for piercing the corporate veil as against it (8/1/19 decision at 6). With respect to plaintiff's BCL § 1006 claim, the court rejected defendants' argument that no assets of LoveLive US were transferred to shareholders or officers, and denied the motion to dismiss with respect to Cohen:

"In the instant action, defendant corporation LoveLive US was informally dissolved by Cohen, the CEO and sole board member. It seems to this court, from what is alleged, that Cohen may have failed to provide for or to pay corporate liabilities for LoveLive US, and, thus, obtaining a judgment against LoveLive US by plaintiff may now be futile. As such, it would seem inefficient to require plaintiff to first obtain judgment against LoveLive US and then move the court to amend her complaint to include Cohen or, alternatively, to institute a new, plenary action against Cohen at some later time. Defendants' motion to dismiss all claims against individual defendant Robert Cohen is, therefore, denied"

8/1/19 decision at 9).

**2. Plaintiff's Discovery Demands and Motion to Compel**

On August 22, 2019, the parties met with the court, which issued a preliminary conference order regarding the timing of discovery demands (NYSCEF Doc No. 75). On October 17, 2019, a status conference was held (*see* status conference order [NYSCEF Doc No. [*4]77]), during which the timing and scope of discovery were discussed, with plaintiff noting that her ability to hold depositions would depend on defendant's complete and responsive production of discovery materials. The court ordered that EBTs be conducted before January 10, 2020.

On September 23, 2019, plaintiff served demands for discovery and inspection to defendants (NYSCEF Doc No. 76). On November 12, 2019, defendants submitted their response to plaintiff's discovery demands (NYSCEF Doc No. 78). Plaintiff asserts that defendants served incomplete responses and non-responsive objections to her demands.

Plaintiff contends that she unsuccessfully attempted to locate and subpoena certain third parties for deposition prior to January 10, 2020. On January 16, 2020, the parties met in person to attempt to resolve discovery disputes, but were unable to reach resolution on many disputed issues. Subsequent to meeting, the parties appeared before this court, at which time plaintiff unsuccessfully sought responses to outstanding demands. The court then directed plaintiff to file a motion to compel discovery (*see* status conference order [NYSCEF Doc No. 80]). On February 4, 2020, plaintiff filed the instant motion to compel discovery (NYSCEF Doc No. 66).

**3. Defendant's Motion to Reargue the First Motion to Dismiss**

On February 2, 2020, defendants filed a motion to reargue this court's August 1, 2019 decision with respect to defendants' first motion to dismiss (NYSCEF Doc No. 43). Defendants argued that this court should have dismissed the complaint as against Cohen, because it does not allege that Cohen received any corporate asset. Defendants further argued that this court should have

dismissed the breach of contract cause of action because plaintiff failed to allege that the "targets were met," or what the "targets" were, as set forth in the Employment Agreement, that would trigger the need for the Severance Payment.

On March 5, 2020, this court heard oral argument regarding the motion to reargue. During that oral argument, with respect to BCL § 1006, this court recognized that "you have a fiduciary duty as a director [and] one of the things that you don't do as a director is sell off assets while knowing that you have creditors who are entitled to notice before you sell those assets. That's what the case law says" (3/5/20 transcript of oral argument at 10 [NYSCEF Doc No. 101]). This court further recognized if "someone at some point s[old] off any kind of physical assets, any other type of monetizable assets . . . . [and] if they did that without notice to their creditors . . . . [t]hat's where the director liability stems from" (id. at 14-15).

This court then granted defendants' motion to reargue on the record, and dismissed the complaint as against Cohen and LoveLive US without prejudice, with leave to file an amended complaint:

"With respect to the claim against Richard Cohen, counsel for defendants has articulated that for there to be director liability in formation with the informal dissolution of the corporation, there has to have been some transfer of assets that was done without appropriate notice to creditors. The complaint does not allege that.

To the extent that the complaint's language does not exclude that possibility, the Court believes that dismissing the complaint without prejudice will allow for a correction in addition of that answering if it is in fact the case.

With respect to Lovelive TV U.S., any condition precedent with lack of specific language regarding condition precedent being satisfied, the Court believes, too, that if it is the case, that that those targets were met and plaintiff can in good faith make those allegations, then the deficiency of the complaint can be cured and thus dismissing it in its current form without prejudice addresses the problem of the complaint and allows for its — [*5]allows for it to be fixed.

Accordingly, it is hereby ordered that the motion for leave to reargue is granted and upon reargument, it is hereby ordered [that the] motion to dismiss the claim against Richard Cohen and Lovelive TV U.S., Inc. is granted without prejudice. It is further ordered that the plaintiff should within 30 days of today's date make all efforts to — the Court is giving plaintiff leave to refile an amended complaint on this index number within 30 days of today's date. If that's not done within those 30 days, then the plaintiff will need to purchase a new index number"

(3/5/20 transcript of oral argument at 17-18).

### 4. The Amended Complaint

On April 3, 2020, plaintiff and defense counsel agreed that all notices should be served to each other via email until otherwise agreed (see emails dated April 3, 2020 [NYSCEF Doc No. 124]). On April 3, 2020, plaintiff informed defense counsel that she was unable to file the amended complaint due to the court's COVID restrictions, but would file as soon as the court allowed (see id.).

On May 19, 2020, plaintiff filed the amended complaint with the changes as directed by this court, and served notice to defense counsel via email with receipt of opening (see proof of receipt [NYSCEF No. 125]). The amended complaint contains two causes of action. The first cause of action is for breach of the Employment Agreement. The second cause of action is for director liability under BCL § 1006.

On June 18, 2020, plaintiff filed and served a supplemental summons corresponding to the amended complaint, as well as a letter to the Court explaining the delay between filings:

"On May 19, 2020, as the plaintiff pro se, I filed an Amended Complaint in the above matter. At that time, I failed to file the Supplemental Summons; I blame my ignorance as a transactional attorney. I have now filed the Supplemental Summons backdated to May 19, 2020"

(6/18/20 letter from plaintiff to court [NYSCEF Doc No. 119]).

On June 22, 2020, defendants filed the instant motion to dismiss plaintiff's amended complaint (NYSCEF Doc No. 109).

## DISCUSSION

## MOTION TO DISMISS THE AMENDED COMPLAINT (MOTION SEQUENCE NO. 004)

Defendants' motion to dismiss the amended complaint is based on three grounds: (1) lack of personal jurisdiction based upon the alleged untimely filing of the amended complaint and supplemental summons; (2) lack of jurisdiction over Cohen as the amended Complaint does not allege that assets were transferred to Cohen during LoveLive's informal dissolution; and (3) plaintiff's failure to state a breach of contract claim.

### Motion to Dismiss Based on Lack of Personal Jurisdiction

Defendants contend that plaintiff has failed to establish personal jurisdiction over either of them because plaintiff failed to file or serve a supplemental summons in this action within 30 days of March 5, 2020. On that date, the court dismissed this action, but ruled that if plaintiff wanted to re-file upon an amended pleading, she could utilize the instant Index Number. [*6]However, the Court noted that, "[i]f that's not done within those 30 days, then the Plaintiff will need to purchase a new index number" (3/5/20 transcript of oral argument at 17-18).

On March 22, 2020—17 days after the court's March 5 directive—Chief Administrative Judge Lawrence K. Marks issued an Administrative Order (AO/78/20) directing that "effective immediately . . . no papers shall be accepted for filing by a county clerk or a court in any matter of a type," with limited enumerated exceptions. On May 20, 2020, Chief Administrative Judge Marks issued a Memorandum ("Filing of New Cases") which ordered that "e-filing through the NYSCEF system . . . will be restored in several counties, including the five New York City counties," as of May 25.

Defendants contend that plaintiff waited 41 days to file the supplemental summons, which does not include the approximately 64 days during which COVID-19 caused the courts to ban non-essential e-filing. When plaintiff filed a supplemental summons via NYSCEF on June 18, 2020, she wrote the court a contemporaneous letter admitting the "fail[ure] to file the Supplemental Summons" and "blame[d]" the failure on "my ignorance" of the process. Defendants contend that this filing was 11 days too late, because, after the passage of 30 days, plaintiff no longer had leave of Court to issue a supplemental summons under this Index Number. According to defendants, the amended pleading is therefore a nullity under New York law, because no process has been served nor proved, and personal jurisdiction has not been established.

The court rejects this argument, as it fails to take into account the executive orders issued by Governor Andrew Cuomo. On March 5, 2020, this court encouraged plaintiff to refile an amended complaint within 30 days of its ruling. The resulting filing deadline would have been April 3, 2020. However, all filings in this court (except for those in "essential matters") were prohibited as of March 22, 2020 pursuant to Judge Marks' administrative order, as well as three Executive Orders issued by Governor Cuomo: No. 202.8, issued March 20, 2020; No. 202.14, issued May 7, 2020; and No. 202.38, issued June 6, 2020 (collectively, the COVID orders).

Governor Cuomo's Executive Order 202.8, entitled "Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency," provides:

"I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 19, 2020 the following:

• In accordance with the directive of the Chief Judge of the State to limit court operations to essential matters during the pendency of the COVID-19 health crisis, *any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding,* as prescribed by the procedural laws of the state, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, the surrogate's court procedure act, and the uniform court acts, *or by any other* statute, local law, ordinance, *order,* rule, or regulation, or part thereof, is hereby tolled from the date of this executive order until April 19, 2020"

(Executive Order 202.8 [emphasis added]).

Executive Order 202.14 extended the suspension through May 7, and Executive Order 202.48 extended the suspension through July 6, 2020. The specific language of Governor Cuomo's executive orders applies to the facts at hand, mandating the suspension and tolling of any specific time limit for "the commencement, filing, or service of any legal action, notice, [*7]motion, or other process or proceeding, as prescribed by" any "order," such as the court's March 5th order requiring plaintiff to re-file her amended pleading within 30 days.

This court finds that plaintiff's filing of the supplemental summons on June 18, 2020 falls easily within the tolling deadline for this court's request for the filing of an amended complaint. Various interpretations of the COVID orders regarding the tolling deadlines are possible. For deadlines that fell between March 20 and July 7, the new deadline might be calculated by either: (1) extending the length of the tolling period (109 days) because the COVID orders should be understood as permissive for any time that lapses during the COVID emergency (i.e., July 21, 2020); or (2) the new deadline should be the next business day after the tolling period expires, (i.e., July 8, 2020). Under either interpretation of the COVID orders, plaintiff filed both the amended complaint and the supplemental summons in accordance with the timeline ordered by this court (i.e., prior to July 8, 2020 or July 21, 2020).

Accordingly, defendants' motion to dismiss for lack of personal jurisdiction is denied.

## Motion to Dismiss for Failure to State a Claim

It is firmly established that, on a motion to dismiss a complaint pursuant to CPLR 3211(a) (7), the court must accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (*see Landon v Kroll Lab. Specialists, Inc.,* 22 NY3d 1, 5-6 [2013]; *Goshen v Mutual Life Ins. Co. of NY,* 98 NY2d 314, 326 [2002]; *Leon,* 84 NY2d at 87). The sole inquiry is whether a cognizable legal theory is contained in the pleading, not whether there is evidentiary support or whether the claimant can ultimately succeed on the merits (*African Diaspora Mar. Corp. v Golden Gate Yacht Club,* 109 AD3d 204, 211 [1st Dept 2013]; *Philips S. Beach, LLC v ZC Specialty Ins. Co.,* 55 AD3d 493, 497 [1st Dept 2008]). If the four corners of the complaint provide potentially meritorious claims, the motion to dismiss should be denied (*see Ashwood Capital, Inc. v OTG Mgt., Inc.,* 99 AD3d 1, 10 [1st Dept 2012]). "However imperfectly, informally, or even illogically the facts may be stated, a complaint, attacked for insufficiency, must be deemed to allege 'whatever can be implied from its statements by fair and reasonable intendment'" (*Feinberg v Bache Halsey Stuart,* 61 AD2d 135, 138 [1st Dept 1978] [citation omitted]).

Construing the amended complaint in the generous manner to which it is entitled, this court concludes that the amended complaint contains sufficient allegations to withstand dismissal.

### 1. BCL§ 1006

In support of its motion to dismiss, defendants contend that the amended complaint fails to state a claim for relief against Cohen because "[n]othing in the Amended Complaint alleges that LoveLive US transferred anything to any Shareholder or Director (and certainly not to Cohen)" (defendants' memorandum of law at 2 [NYSCEF Doc No. 122]).

Once again, defendants mischaracterize the facts that must be pled to sufficiently allege a BCL § 1006 claim. This court has already twice directly addressed and rejected defendants' argument that a director must receive a transfer of assets for liability to accrue: first, when it granted jurisdiction over Cohen in its August 1, 2019 order, and then again during oral argument of defendants' motion to reargue on March 5, 2020, stating that:

"The *Darcy* court was unequivocal in its determination that it is the neglect to afford creditors an opportunity for court review of their claims that constitutes a violation of the directors' duties. And it matters not that they may have supposed that they were not [*8]required to do any more, but then they did for the protection of creditors.

It doesn't say anything about transferring assets to the directors. It says that when you dissolve the corporation without giving notice to the creditor. If you take your — if you take your corporation and you know you owe creditors $100,000 and you dissolve your corporation and sell off $50,000 to someone else, you sell off bits and pieces of your corporation to some other entities and don't tell those creditors, then you as director have a responsibility for overseeing the corporation [and] have failed in your obligation as a director.

Normally, as a director . . . you have a fiduciary duty as a director [and] one of the things that you don't do as a director is sell off assets while knowing that you have creditors who are entitled to notice before you sell those assets. That's what the case law says.

* * *

Nothing says [directors] have to receive [assets]. That's for shareholders. For directors, the failure is the failure to give proper notice. So there needs to be a transfer, yes. The director's failure is in failing to follow the steps necessary to give adequate notice to the creditors, so they can maintain their claims"

(transcript of 3/5/20 oral argument at 9-10, 13-14; *see Darcy v Brooklyn & NY Ferry Co.,* 196 NY 99, 103 [1909]; *see also Matter of* Hartley, 479 BR 635, 640-641 [SD NY 2012] [under New York law, where it is impossible or futile to obtain a judgment against a defunct corporation that has defaulted on debts by "informal dissolution," creditors can maintain an action directly against the directors or shareholders]; *Parent v Amity Autoworld, Ltd.,* 15 Misc 3d 633, 640 [Suffolk Dist Ct 2007] ["the cost of an informal dissolution is that directors cannot shield themselves against corporate creditor liability. Directors who undertake to divest a corporation of all its property without taking the proceedings for a voluntary dissolution do so at their peril"]).

In the amended complaint, plaintiff alleges that, on December 8, 2016, after defaulting on creditors by informal dissolution, LoveLive US disbursed cash assets to select employees as payroll compensation (amended complaint, ¶ 45). Plaintiff further alleges that Johnson was contracted by LoveLive UK to liquidate LoveLive US's material assets, and that, in addition to cash, LoveLive US transferred and/or informally liquidated various non-cash assets by informal dissolution, including office equipment, computer equipment, and kitchen equipment (*id.,* ¶¶ 46, 49). Finally, plaintiff alleges that, during the March 5, 2020 oral arguments, defense counsel confirmed that no formal notice of dissolution or accounting was ever provided to creditors of LoveLive US (*id.,* ¶ 50). This court finds that these allegations are sufficient to state a claim for liability against Cohen pursuant to BCL § 1006.

Although defendants also argue that the tort of deepening insolvency is not recognized by New York courts, this argument is irrelevant, as plaintiff has never argued that deepening insolvency applies to this case.

Accordingly, defendant's motion to dismiss plaintiff's BCL § 1006 claim is denied.

### 2. Breach of Contract

Defendants argue that plaintiff's cause of action for breach of contract must be dismissed as against LoveLive US because, although "the Amended Complaint does, at long last, allege that the contract obligation that Plaintiff invokes has a condition precedent in the meeting of 'targets,' the Amended Complaint still makes no effort to explain what those targets were, nor [*9]how they were met" (defendants' memorandum of law at 3-4). This court disagrees.

In its decision on the record on March 5, 2020, this court stated that "[w]ith respect to Lovelive TV U.S., any condition precedent with lack of specific language regarding precedent being satisfied, the Court believes, too, that [if] it is the case, that those targets were met and plaintiff can in good faith make those allegations, then the deficiency of the complaint can be cured" (3/5/20 --

transcript of oral argument at 17).

In the amended complaint, plaintiff specifically alleges that "targets" meant satisfactory performance by plaintiff of her services for LoveLive US, that plaintiff met all the "prerequisite [sic] targets" for LoveLive necessary for the payment of the Severance Amount, and that Cohen stated that such targets were met (see amended complaint, ¶¶ 17, 23, 26, 27). This court finds that these allegations are sufficient to state a cause of action for breach of contract against LoveLive US.

Thus, defendants' motion to dismiss plaintiff's breach of contract cause of action is denied.

## MOTION TO COMPEL DISCOVERY (MOTION SEQUENCE NO. 003)

Plaintiff moves to compel complete responses to her outstanding discovery demands. Plaintiff asserts that, at the meeting on January 16, 2020, the parties agreed that plaintiff would drop certain discovery demands to which defendants had previously provided incomplete and unresponsive answers, and that the parties were unable to come to resolution regarding the remainder of the discovery demands.

It is well established that the failure to provide good-faith responses to discovery demands "'impairs the efficient functioning of the courts and the adjudication of claims;" (Arpino v F.J.F. & Sons Elec. Co., Inc., 102 AD3d 201, 207 [2d Dept 2012], quoting Gibbs v St. Barnabas Hosp., 16 NY3d 74, 81 [2010]). Under CPLR 3101(a), "full disclosure" is required for "all matter material and necessary in the prosecution or defense of an action." The Court of Appeals has held that "material and necessary" is "to be interpreted liberally," and that the test of whether matter should be disclosed is "one of usefulness and reason" (Allen v Crowell—Collier Publ. Co., 21 NY2d 403, 406 [1968]). The Court of Appeals specifically interpreted "material and necessary" to mean nothing more or less than "relevant" (id. at 407; see e.g. Osowski v AMEC Constr. Mgt., Inc., 69 AD3d 99, 106 [1st Dept 2009] ["it was proper for the trial court to compel disclosure of [the settlement agreements] because these agreements were 'material and necessary' to the issues raised in the third-party action"]).

As set forth below, the disclosure sought by plaintiff is relevant, material, and necessary to her claims against defendants. Importantly, defendants have submitted no opposition to plaintiff's motion. Thus, an order compelling such disclosure is warranted (see CPLR 3124; see also City of New York v Maul, 118 AD3d 401, 402 [1st Dept 2014] [compelling disclosure of documents relevant to plaintiff's claims]).

First, defendants claim that plaintiff's demand for production of "board minutes" for one year prior to the date of commencement of this action is "irrelevant" and "overbroad" (see defendants' response to document requests, section b). However, LoveLive US's board minutes prior to its dissolution are certainly relevant to determine when and whether it lost all of its assets, and who made the decision to consider the company as insolvent and no longer functional.

Defendants also object to plaintiff's demand for a list of LoveLive US's directors for one year prior to the commencement of this action to the present (see id., section e). Because this [*10]court has ruled that Cohen may be liable in this action due to his role as a director of LoveLive US, establishing that Cohen was and is the only director of LoveLive US is directly relevant to this matter.

Defendants object to plaintiff's demand for internal emails, working notes, documents and communications relating regarding plaintiff's hiring by defendants, as well as any drafts of the Employment Agreement, as overbroad (see id., sections j, l, m and n). However, such emails and other documents are clearly relevant, and likely critical, to deciphering the meaning and intent of the Employment Agreement, given that the phrase "targets are met" is not defined in the Employment Agreement itself.

Defendants also object to plaintiff's demands for materials relating to the nature and quality of her performance as a LoveLive US employee, as well as materials regarding the termination of the Employment Agreement by LoveLive US, as "overbroad" (see id., sections p and q). These documents, however, are also directly relevant to the issue of whether plaintiff has met her performance "targets," as set forth in the Employment Agreement.

Defendant further object to the production of discovery materials relating to the dissolution of LoveLive US, stating that "no dissolution has occurred" (see id., section v). Defendants also failed to completely answer plaintiff's interrogatories regarding: the timeline of dissolution of LoveLive US, the finances of LoveLive US causing such dissolution, the process and parties involved in making the decision to dissolve LoveLive US, the involvement by Cohen in the process of LoveLive US's dissolution, and the disposition of LoveLive US's assets at time of dissolution (see defendants' response to interrogatories [NYSCEF Doc No. 79], sections p, q, r, s and t). As the Court has permitted jurisdiction over Cohen due to LoveLive US's informal dissolution, these documents, as well as full and complete answers to plaintiff's interrogatories, are certainly relevant and material.

Defendants object to the production of discovery materials relating to substantiation of their affirmative defenses for failure to state a cause of action, equitable principles of release, failure of consideration, laches, privity, waiver, unclean hands and/or estoppel, the statute of frauds, abandonment of rights, and impossibility to plaintiff's causes of action, as "overbroad" (see defendants' response to document requests, section x), as well as failing to answer plaintiff's interrogatories regarding the factual basis for such affirmative defenses (see defendants' response to interrogatories, sections l, m, n and o). Again, production of documents relating to defendants' affirmative defenses, as well as responses detailing the factual basis for such affirmative defenses, are certainly relevant.

Because the record demonstrates that plaintiff's requests seek material and necessary information, the motion to compel is granted (see O'Halloran v Metropolitan Transp. Auth., 169 AD3d 556, 557 [1st Dept 2019]; Portillo v Carlson, 167 AD3d 792, 793 [2d Dept 2018]).

The court has considered the remaining arguments, and finds them to be without merit.

Accordingly, it is

ORDERED that defendants' motion to dismiss the amended complaint (motion sequence no. 004) is denied; and it is further

ORDERED that plaintiff's motion to compel discovery (motion sequence no. 003) is granted, and defendants are directed to serve all documents in their possession that are responsive to plaintiff's outstanding demands for discovery, as well as to serve and full and complete response to plaintiff's interrogatories, within 20 days of service upon defendants of a copy of this decision with notice of entry. If no such documents exist, defendants are directed to [*11]so state in a sworn affidavit by an officer or someone with personal knowledge of the facts, within such 20-day time period.

DATE 12/15/2020
ROBERT R. REED, J.S.C.

Return to Decision List



vide Administrative Services

ch
y & ReportsDCAS Open Data Sets

*Exhibit 7*

DCAS Annual Reports
Energy Management Documents
Equity & Inclusion Policy & Reports
Human Capital Policy & Reports
Fleet Policy & Reports
Local Law Required Reports
DCAS Return to Office Plan

## rsonnel Rules and Regulations of the City of New York

### e V - Appointments And Promotions

#### ion I - Appointments And Promotions Generally

. Prohibition Against Out-of-Title Work.

erson shall be appointed, promoted or employed under any title not appropriate to the duties to be performed and, except upon assignment by proper authority during the continuance of a temporary gency situation, no person shall be assigned to perform the duties of any position unless duly appointed, promoted, transferred or reinstated to such position in accordance with the law and rules presc for. No credit shall be granted in a promotion examination for out-of-title work.

. Procedures for Identification and Oath.

pon appointment or promotion an eligible shall be fingerprinted and shall execute in the presence of the agency head or representative the prescribed identification form.

eligible shall likewise take and file such oath or affirmation as may be required by law. Such oath shall not be required from an employee in the labor class and shall be required only in other cases up al appointment or upon a new appointment following an interruption of continuous service and shall not be required upon promotion, demotion, transfer or other change of title during the continued ser employee, or upon the reinstatement pursuant to law or rules of an employee whose services have been terminated and whose last executed oath is on file.

e duly executed identification form of the eligible or employee, together with the notice of appointment or promotion, shall be transmitted to the department of citywide administrative services.

. Appointment Subsequent to Qualification.

ever a person has been declared qualified after investigation, medical or other qualifying tests or requirements, and is certified either by the commissioner of citywide administrative services or the he lifying agency for appointment after such qualification, such person upon appointment shall execute a supplemental statement, as the commissioner of citywide administrative services may prescribe, ining to such investigation, medical or other qualifying tests or requirements.

#### ion II - Probationary Terms

. Probationary Term.

very appointment and promotion to a position in the competitive or labor class shall be for a probationary period of one year unless otherwise set forth in the terms and conditions of the certification for intment or promotion as determined by the commissioner of citywide administrative services. Appointees shall be informed of the applicable probationary period.

very original appointment to a position in the non-competitive or exempt class shall be for a probationary period of six months unless otherwise set forth in the terms and conditions for appointment as mined by the commissioner of citywide administrative services. Appointees shall be informed of the applicable probationary period. However, such probationary period may be terminated by the nissioner of citywide administrative services or by the agency head before the end of the probationary period, and the appointment shall thereupon be deemed revoked. Nothing herein shall be deeme permanent tenure to any non-competitive or exempt class employee.

. Effect of Certain Prior Service and Military Law.

otwithstanding anything to the contrary contained in paragraph 5.2.1, if a permanent employee has served in a promotional title and particular job assignment on a provisional or temporary basis for a nuous period equal to or greater than the probationary period for that title immediately prior to a permanent promotion to such title or, as determined by the commissioner of citywide administrative ser itle in a similar grade and in such particular job assignment or similar job assignment in the same agency, the promotee shall not be required to serve a probationary period upon such promotion.

ubject to the provisions of the military law of the state of New York, the computation of the probationary period shall be based on the time during which the employee is on the job in a pay status.

. Status of Former Position Upon Promotion.

promotion, the position formerly held by the person promoted shall be held open for the promotee, and shall not be filled, except on a temporary basis, pending completion of the probationary term.

. Waiver Upon Promotion.

promotion, the agency may waive the requirement of satisfactory completion of the probationary term at any time during such term.

. Leave of Absence During Probationary Term.

ever a probationer who has not completed a probationary term has been granted a leave of absence to accept appointment on a provisional, temporary, emergency or exceptional basis to another po city service or to accept permanent appointment to a position in another jurisdictional classification, the period of service in such position or positions may, in the discretion of the agency head who inted such person as a probationer, be counted as satisfactory probationary service in determining the completion of such probationary term.

. Restoration After Separation From Service; Conditions.

bationer separated from the service for any reason other than fault or delinquency may be restored by, and at the discretion of, the commissioner of citywide administrative services to the eligible list fr n selected, if it be in existence, with the same relative standing thereon for general certification therefrom or for certification to agencies other than the one from which the probationer was separated ded that:

e time during which such person has actually served shall be deducted from the probationary term if such person be again selected by the same agency head;

selected by another agency head, such person shall be required to serve a full probationary term unless such agency head elects to credit such person with the time theretofore served.

. Termination.

t the end of the probationary term, the agency head may terminate the employment of any unsatisfactory probationer by notice to such probationer and to the commissioner of citywide administrative

ng for all probationary employees in a given title or titles, the agency head may, at the close of such course of study or training, terminate the employment of any probationer who fails to complete ssfully such course of study or training, as the case may be.

otwithstanding the provisions of paragraphs 5.2.1 and 5.2.7(a) the agency head may terminate the employment of any probationer whose conduct and performance is not satisfactory after the complet imum period of probationary service and before the completion of the maximum period of probationary service by notice to the said probationer and to the commissioner of citywide administrative serv specified minimum period of probationary service, unless otherwise set forth in the terms and conditions of the certification for appointment or promotion as determined by the commissioner of citywide nistrative services, shall be:

o months for every appointment to a position in the competitive or labor class and

ur months for every promotion to a position in the competitive or labor class.

. Extension of Probationary Period.

otwithstanding the provisions of paragraph 5.2.1, upon the written request of the agency head setting forth the reasons therefor and with the written consent of the probationer, the commissioner of cit nistrative services may authorize the extension of the probationary term for one or more additional periods not exceeding in the aggregate six months; provided, however, that the agency head may nate the employment of the probationer at any time during any such additional period or periods.

otwithstanding the provisions of paragraphs 5.2.1, 5.2.2 and 5.2.8(a), the probationary term is extended by the number of days when the probationer does not perform the duties of the position, for ple:

d duty status, annual leave, sick leave, leave without pay, or use of compensatory time earned in a different job title; provided, however, that the agency head may terminate the employment of the ationer at any time during any such additional period.

. Restoration After Termination.

e the services of a probationer have been terminated, the commissioner of citywide administrative services has the discretion to and may restore the name of such probationer to the eligible list, if it be ance. Such probationer's name shall be duly certified to other agency heads or to the same agency head if the latter so requests.

0. Continued Employment Pending Appeal.

ever a probationer who has been declared not qualified by the commissioner of citywide administrative services for the position held by the probationer files an appeal with the commission, upon the n request of the agency head setting forth the reasons therefor, the probationer's continued employment may be authorized at the discretion of the commissioner of citywide administrative services pe decision of such appeal; provided, however, that the period of service between such declaration of disqualification and the disposition of the appeal shall not be counted in determining the completion c probationary term.

1. Reports to Commissioner of Citywide Administrative Services.

commissioner of citywide administrative services may require an agency head to report in writing on the quality of the performance of any probationer.

## tion III - Promotions

. General Provisions.

xcept as otherwise provided, promotion examinations and promotions shall be governed by the rules relating to original appointments.

he provisions of this section shall apply to promotion examinations conducted by the department of citywide administrative services and to non-written promotion examinations conducted by examining cies.

## 2. Limitations On Promotion.

o promotion shall be made from one position or title to another position or title unless specifically authorized by the commissioner of citywide administrative services, nor shall a person be promoted to ion or title for which there is required an examination involving essential tests or qualifications different from or higher than those required for the position or title held by such person unless the person ed the examination and is eligible for appointment to such higher position or title.

n increase in the salary or other compensation of any person holding an office or position in the competitive class beyond the limit fixed for the grade of such position in the classification rules or an ncement from one rank to a higher rank shall be deemed a promotion except as provided otherwise in a labor contract, a labor relations order or personnel order and be subject to the prohibition of thi graph.

## 3. Filling Vacancies by Promotion.

xcept as provided in paragraph 5.3.5, vacancies in positions in the competitive class shall be filled, so far as practicable, by promotion from among persons holding competitive class positions in a lowe e in the agency in which the vacancy exists, provided that such lower grade positions are in the direct line of promotion, as determined by the commissioner of citywide administrative services.

here the commissioner of citywide administrative services determines that it is impracticable or against the public interest to limit eligibility for promotion to persons holding lower grade positions in the t line of promotion, the commissioner of citywide administrative services may extend eligibility for promotion to persons holding:

ompetitive class positions in lower grades which are determined by the commissioner of citywide administrative services to be in related or collateral lines of promotion; or

omparable positions in any other unit or units of governmental service and may prescribe minimum training and experience qualifications for eligibility for such promotion.

he commissioner of citywide administrative services may open promotion examinations to eligibles, otherwise qualified, in two or more grades who shall have served for the required period in any or all grades to which such examination is open. The commissioner of citywide administrative services also may extend eligibility in a promotion examination to persons holding positions of a corresponding acter in the same grade as that of the position for which the examination is held. Eligibility shall be limited to persons who meet the requirements prescribed in the announcement of examination.

gency requests for any extension of eligibility provided for in this paragraph shall be made in accordance with the regulations of the commissioner of citywide administrative services.

## 4. Promotion Units.

notion examinations may be held for such subdivisions of an agency as the commissioner of citywide administrative services may determine to be an appropriate promotion unit. Where promotion ninations are held for a promotion unit in an agency there shall be no certification of agency and citywide promotion eligible lists until after the promotion unit eligible lists for that agency have been usted.

## 5. Filling Vacancies by Open Competitive Examination.

Jpon the initiative of the commissioner of citywide administrative services or upon the written request of an agency head stating the reasons therefor the commissioner of citywide administrative service determine to conduct an open competitive examination for filling a vacancy or vacancies instead of a promotion examination.

n agency head may determine that an open competitive examination should be conducted for filling a vacancy or vacancies in positions within the agency, instead of a promotion examination, subject t isions of this paragraph.

rior to any determination under paragraph 5.3.5(a) or (b) a determination shall be made by the commissioner of citywide administrative services:

hether there are less than three persons eligible for promotion in the promotion unit where the vacancy exists or in the agency, if such vacancy is not in a separate promotion unit; or

hether, in consultation with the agency head, an open competitive and promotion examination should be held simultaneously for vacancies in such positions.

d in the offices of both the agency and the department of citywide administrative services, where such determination include the commissioner of citywide administrative services under the provisi (a). The determination or request shall not be acted upon until said notice has been so posted for a period of not less than fifteen days.

notice of intention to conduct such open competitive examination shall be publicly and conspicuously posted in the offices of the agency, where such determination is made by the agency head under sions of 5.3.5(b). Said notice shall be so posted for a period of not less than fifteen days. The agency head's determination and the reasons therefor, in writing, shall have been sent to the commissione de administrative services simultaneously with such posting.

y employee who believes that a promotion examination should be held for filling such vacancy, may submit to the commissioner of citywide administrative services and the agency head a request in w promotion examination rather than an open competitive examination, stating the reasons why such employee believes it to be practicable and in the public interest to fill the vacancy by promotion ination.

ne commissioner of citywide administrative services shall decide whether to disapprove an agency determination pursuant to 5.3.5(b) within thirty days of its receipt.

. Citywide Lists.

commissioner of citywide administrative services may establish citywide promotion lists which shall not be certified to an agency until after the promotion eligible list for that agency has been exhausted

. Promotion by Non-Competitive Examination.

never there are no more than three persons eligible for examination for promotion to a vacant competitive class position, or whenever no more than three persons file applications for examination for otion to such position, the agency head may nominate one of such persons and such nominee. upon passing an examination appropriate to the duties and responsibilities of the position may be promo o examination shall be required for such promotion where such nominee has already qualified in an examination appropriate to the duties and responsibilities of the position.

. Factors in Promotion.

otion shall be based on merit and fitness as determined by examination. Seniority, previous training and experience of candidates, and performance based on performance evaluation may be conside jiven due weight as factors in determining the relative merit and fitness of candidates for promotion.

. Credit for Provisional Service.

edit in a promotion examination shall be granted to any person for any time served as a provisional appointee in the position to which promotion is sought or in any similar position, provided, however, sional appointee by reason of such provisional appointment shall receive credit in the permanent position from which promotion is sought for such time served in such provisional appointment.

10. (Deleted 10/19/81)

11. (Deleted 10/19/81)

12. Eligibility to Compete in a Promotion Examination:

rred List or Leave of Absence Status. An employee who has been suspended from a position through no fault of the employee and whose name is on a preferred list, and any employee on leave of ice from a position shall be allowed to compete in a promotion examination for which such employee would otherwise be eligible on the basis of actual service before suspension or leave of absence.

13. (Deleted 10/19/81)

14. Eligibility for Certification from a Promotion List.

ility for certification by the commissioner of citywide administrative services or head of a certifying agency from a promotion list shall be limited to permanent employees whose names appear on such have successfully completed their probationary periods in the eligible title from which promotion is being made.

15. Eligible List Status of Employees Involuntarily Transferred, Reinstated From a Preferred List or Transferred to Avoid Layoff.

never a permanent employee is involuntarily transferred from one agency to another due to a transfer of personnel upon a transfer of functions or whenever such employee is reinstated from a preferre agency other than the one from which the employee was separated:

both the examination for the agency to which the employee is being transferred and the examination for the agency from which the employee was transferred were not given simultaneously nor are th ical, the employee shall be entitled, upon written application, to have his or her name transferred from such agency promotion list upon which it may appear in the first agency and entered upon a sponding special promotion list for the agency to which such employee was reinstated from the preferred list or was involuntarily transferred. However, such corresponding special promotion list shall ied for promotion to such agency until any existing corresponding agency and unit promotion list or lists shall have been exhausted or terminated;

both the examination for the agency to which the employee is being transferred and the examination for the agency from which the employee was transferred were given simultaneously and are identi aid employee shall be entitled upon written application to have his or her name transferred from such agency promotion list upon which it may appear and entered upon the appropriate eligible list in th cy to which such employee was reinstated from the preferred list or was involuntarily transferred based upon the final adjusted mark of such employee;

both the examination for the agency to which the employee is being transferred and the examination for the agency from which the employee was transferred were given simultaneously and although ical the commissioner of citywide administrative services has determined that said examinations are comparable, the said employee shall be entitled upon written application to have his or her name ferred from such agency promotion list upon which it may appear and to have his or her name entered upon the appropriate eligible list in the agency to which such employee was reinstated from the rred list or was involuntarily transferred based upon the final adjusted mark of such employee.

he provisions of this section shall apply to a permanent employee who is transferred either voluntarily or involuntarily to avoid imminent suspension or demotion of employees within an agency due to a tion or reduction of positions. The determination that suspensions or demotions are imminent shall be made by the commissioner of citywide administrative services.

here employees in the second agency, in the same title as the transferred employees provided for in this section, would have been eligible to participate in a promotion examination given at the same e one given to such transferred employees, but no such promotion examination was given, the provisions of this section shall not apply to such transferred employees.

16. Provisions for Promotion in the Correction, Fire, Housing Police, Police, Rapid Transit Railroad and Transit Police Services.

he provisions of paragraph 5.3.14 shall not be applicable in the case of promotion examinations and promotions in the correction, fire, police, and rapid transit railroad services.

ligibility to compete in promotion examinations for positions in the rapid transit railroad service shall be limited to employees, otherwise qualified, who have served permanently in the eligible title or title riod of not less than one year if the examination is for a position in group II or for a period of not less than six months if the examination is for a position in group I, except as otherwise provided by law o ed in the notice of examination.

examinations for promotion to positions in the police, fire, rapid transit railroad, transit police, housing police and correction services, the method of rating seniority and performance and the terms and itions of eligibility for competition and promotion therefor shall be set forth in the announcement of examination.

ction IV--Temporary Appointments

1. Temporary Appointments from Eligible Lists.

temporary appointment for a period not exceeding three months, where the need therefor is important and urgent, may be made without regard to existing eligible lists.

temporary appointment for a period exceeding three months but not exceeding six months may be made by the selection of a person from an appropriate eligible list, if available, without regard to the ve standing of such person on such list.

ny further temporary appointment beyond such six-month period or any temporary appointment originally made for a period exceeding six months shall be made by the selection of an appointee from ng those graded highest on an appropriate eligible list, if available, upon certification thereof by the commissioner of citywide administrative services to the agency head in the manner prescribed in the

is limitation, however, shall not apply during the last four months of the life of such eligible list.

he head of a certifying agency shall certify eligible lists for classes of positions unique to the agency pursuant to the provisions of this section and shall report thereon as prescribed by the commissione ide administrative services.

### . Temporary Appointments Exceeding One Month Duration.

mporary appointment may be made to a position when an employee is on leave of absence from such position for a period not exceeding the duly authorized duration of such leave of absence.

mporary appointment may be made for a period not exceeding six months when the commissioner of citywide administrative services shall find, upon due inquiry, that the position to which such intment is proposed will not continue in existence for a longer period; provided, however, that where such appointment is made and it subsequently develops that such position will remain in existence nd such six-month period such temporary appointment may be extended with the approval of the commissioner of citywide administrative services for a further period not to exceed an additional six m

### . Successive Temporary Appointments.

ot as otherwise provided, successive temporary appointments pursuant to paragraphs 5.4.1 or 5.4.2 shall not be made to the same position after the expiration of the authorized period of the original orary appointment to such position.

### . Effect of Temporary Appointment on Promotion Eligibility.

mployee who is appointed or promoted to a position left temporarily vacant by the leave of absence of the permanent incumbent thereof (pursuant to rule 5.4.2) after having qualified therefor in the sa er as required for permanent appointment or promotion thereto, shall have all the rights and benefits with respect to promotion eligibility of permanent status.

## tion V--Provisional Appointments

### . Appointment Requirements.

ever there is no appropriate eligible list available for filling a vacancy in the competitive class, the agency head may nominate a person to the commissioner of citywide administrative services for non etitive examination, and:

such nominee shall be certified by the commissioner of citywide administrative services as qualified after such non-competitive examination, the nominee may be appointed provisionally to fill such vac a selection and appointment can be made after competitive examination;

ich non-competitive examination may consist of a review and evaluation of the training, experience and other qualifications of the nominee without written, oral or other performance tests.

### . Duration.

visional appointment shall not continue for a period in excess of nine months.

### . Termination.

visional appointment to any position shall be terminated within two months following the establishment of an appropriate eligible list for filling vacancies in such positions; provided, however, that:

en there is a large number of provisional appointees in any agency to be replaced by permanent appointees from a newly established eligible list and the agency head deems that the termination of tl oyment of all such provisional appointees within two months following the establishment of such list would disrupt or impair essential public services, evidence thereof may be presented to the issioner of citywide administrative services; and

ter due inquiry, and upon finding that it is in the best interests of the public service, the commissioner of citywide administrative services may thereupon waive the provision of this paragraph requiring nation of the employment of provisional appointees within two months following the establishment of an appropriate eligible list and authorize the termination of the employment of various numbers of sional appointees at prescribed stated intervals;

no case however shall the employment of such provisional appointee be continued longer than four months following the establishment of such eligible list.

### . Successive Provisional Appointments.

iccessive provisional appointments shall not be made to the same position after the expiration of the authorized period of the original provisional appointment to such position except as provided in thi iraph.

here an examination for a position or group of positions fails to produce a list adequate to fill all positions then held on a provisional basis, or where such list is exhausted immediately following its lishment, a new provisional appointment may be made to any such position remaining unfilled by permanent appointment. Such new provisional appointment may, in the discretion of the agency head to a current or former provisional appointee in such position, except that a current or former provisional appointee who becomes eligible for permanent appointment to any such position shall, if he/sh o be continued in or appointed to any such position be afforded permanent appointment to such position.

### . Credit for Provisional Service.

ommissioner of citywide administrative services may, by regulation, provide a suitable method for the computation of experience credit for provisional service in open competitive or labor class inations.

### . Review of Provisional Appointments.

ommissioner of citywide administrative services shall review any appointments of persons as provisional employees within sixty days after appointment to assure compliance with the New York City er, the civil service law and other applicable law and the rules and regulations of the commissioner of citywide administrative services.

## tion VI--Seasonal Appointments

### . Seasonal Appointments Authorized.

sitions in the competitive class, where the nature of the service is such that it is not continuous throughout the year, but recurs in each successive calendar year, may be designated by the commissio de administrative services as seasonal positions and appointments thereto shall be designated as seasonal appointments.

### . Seasonal Re-employment Roster.

the end of an employment season, the names of all persons employed during such season or major portion thereof shall be entered upon a seasonal re-employment roster in the order of their first ntment to the title vacated by them on the expiration of such employment season provided that:

e services rendered by such persons shall have been certified as satisfactory during such season or major portion thereof by the agency head; and

ey are otherwise still qualified.

e names of the persons appearing on such roster shall be certified in numerical order during the next succeeding season to an agency head upon that official's request for seasonal re-employment in ons previously held by such persons or similar positions.

ie qualifications of any such person may be further reviewed by the commissioner of citywide administrative services with respect to such person's continuing fitness to perform the required duties and n may be disqualified for re-employment in the same manner and for any of the reasons applicable to disqualification for permanent employment.

### . Effect Upon Status

ii in this section.

## tion VII--Exceptional Appointments

. Temporary Appointments Without Examination in Exceptional Cases.

e commissioner of citywide administrative services may authorize a temporary appointment, without examination, when the person appointed will render professional, scientific, technical or other expe
es:

an occasional basis; or

a full-time or regular part-time basis in a temporary position established to conduct a special study or project for a period not exceeding eighteen months.

ich appointment may be authorized only in a case where because of the nature of the services to be rendered and the temporary or occasional character of such services it would not be practicable to
amination of any kind.

. (Deleted 7/8/80)

. Records.

ceptions made pursuant to this section shall be recorded by the commissioner of citywide administrative services.

. Effect Upon Status.

ns engaged for employment pursuant to this section shall acquire no civil service status or right or privilege of tenure other than those set forth herein.

. City Services Aides.

ntments to positions in the title city services aide title code no. 91405 which are paid on a per diem basis entirely from state and/or federal funds and are designed for the purpose of training individual
ic skills and/or providing work opportunity in accordance with the provisions of an agreement between the City of New York or one of its agencies or authorities and the New York State or federal ager
ed, shall be designated as exceptional appointments. Such appointments shall be made after authorization by the commissioner of citywide administrative services and in accordance with the terms a
ions of the appropriate agreement and for a period not to exceed eighteen months.

ntments to positions in the title city services aide title code no. 91405 which are needed to perform or directly supervise the performance of general work requiring little or no experience or education a
result from a natural or humankind emergency that has been declared by the mayor, shall also be designated as exceptional appointments. Such per diem appointments shall be made after authoriza
commissioner of citywide administrative services and shall exist for the duration of the emergency, not to exceed a total of six months.

## tion VIII--Trainee Or Aide Appointments

. Trainee or Aide Appointments Authorized; Conditions.

ommissioner of citywide administrative services may require that permanent appointments to designated positions in the competitive class shall be conditioned upon the satisfactory completion of a pe
vice as a trainee or aide in an appropriate lower, trainee or aide position in such class and/or, where required, the completion of specified formal courses of training.

ie period of such trainee or aide service shall be prescribed and set forth in the announcement of examination.

pon the satisfactory completion of such trainee or aide service and/or of specified formal courses of training, as the case may be, an appointee shall attain permanent status in the designated position.

y trainee or aide appointment shall be subject to such probationary term as is prescribed in the rules.

ie employment of such trainee or aide may be terminated at the end of the period of the trainee or aide service, or at any time within such period, if the trainee's or aide's conduct, capacity or fitness is
actory or if such person fails to pursue or to continue satisfactorily such formal courses as may be required, provided, however, that the announcement of examination shall set forth appropriate inform
e to such termination.

. Effect of Service in a Trainee Title Upon Probationary Period in the Permanent Title.

he opinion of the agency head, an appointee conclusively demonstrates during service in a trainee title ability and fitness to perform the duties of the permanent title to which the appointee is thereafte
ied, completion of service in the trainee title, in the discretion of the agency head, may be deemed to be satisfactory completion of the probationary period in the permanent title, provided that the age
files a written statement to that effect with the department of citywide administrative services at the time of such assignment to the permanent title.

## Payne v. NYSDHR et al.

Huth, Phoebe (LAW) <PHuth@law.nyc.gov>

Thu 4/25/2024 3:46 PM

To:t.payne <t.payne@live.com>

📎 1 attachments (29 KB)

Payne- Stipulation for Adjournment_4.25.24.docx;

Good afternoon Ms. Payne,

Thank you for speaking with me earlier today. As we discussed, please find the draft Stipulation to Adjourn.

Please review the Stipulation and, if it looks alright, sign the stipulation. Please then return it to me, where I will file it with the Court.

Thank you again for being amenable.

Phoebe

Phoebe Huth
Assistant Corporation Counsel
Office of the Corporation Counsel
100 Church Street, Room 2-105
New York, New York  10007
212-356-2434 (phone)
phuth@law.nyc.gov

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------- x

TAREN PAYNE,

                                        Petitioner,

                    -against-

NEW YORK STATE DIVIONS OF HUMAN RIGHTS,              **STIPULATION OF**
and NEW YORK CITY ADMINISTRAION OF                  **ADJOURNMENT**
CHILDREN SERVICES
                                                    Index No. 101255/2023
                                        Respondents,

For a Judgment and Order pursuant to Article 78 of the
Civil Practice Law and Rules.

--------------------------------------------------------        x

    **IT IS HEREBY STIPULATED AND AGREED**, by and between the parties, as represented below, that the return date of the above-captioned proceeding is adjourned from June 5, 2024 until August 14, 2024. It is further stipulated and agreed that Respondents will serve and file their response to the Petition by July 10, 2024. Petitioner agrees to serve and file her reply papers, if any, by August 5, 2024.

    **IT IS FURTHER STIPULATED AND AGREED** that an electronic signature on this stipulation shall have the same effect as an original signature.

Dated:  New York, New York
    April 25, 2024

**TAREN PAYNE**                          **HON. SYLVIA O. HINDS-RADIX**
Pro Se                                   Corporation Counsel of the
2289 5th Avenue                          City of New York
New York, New York 10037                 Attorney for Respondents
(814) 580-8565                           100 Church St., Room 2-105
t.payne@live.com                         New York, New York 10007
                                         (212) 356-2434
                                         phuth@law.nyc.gov

By:  _____             By:  _____
  Taren Payne                         Phoebe Huth
  Pro Se                              Assistant Corporation Counsel

Index No. 101255/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TAREN PAYNE,

Petitioner,

—against—

NEW YORK STATE DIVIONS OF HUMAN RIGHTS, and NEW
YORK CITY ADMINISTRATION FOR CHILDREN SERVICES,

Respondents,

For a Judgment and Order pursuant to Article 78 of the Civil
Practice Law and Rules.

## STIPULATION OF ADJOURNMENT

*HON. SYLVIA O. HINDS RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Respondents*
*100 Church Street*
*New York, N.Y. 10007-2601*

*Of Counsel: Phoebe Huth*
*Tel: (212) 356-2434*
*Matter No.: 2023-109764*

*Due and timely service is hereby admitted.*

*New York, N.Y.* ............................................................................, *2024* ...

*Attorney for*............................................................................................

Statement of Facts        Case No:

| Pre | Date | Description | Associated Exhibit |
|---|---|---|---|
| on or about | 10/23/2017 | Hire | - |
| on or about | 6/27/2018 | WPV Horizon Facility whil e Construction Escort by co-worker | - |
| on or about | 10/1/2018 | work location changed to 150 william street from 560 Brook | - |
| on or about | 2/2/2018 | Request for RA | - |
| on or about | 3/2/2018 | RA granted | - |
| on or about | 12.14.18 | FMLA submitted, ADA adverse statement made | - |
| on or about | 10.1.28 | Assigned to Schanequa Knight (SK)as supervisee | - |
| on or about | 11.13.18 | Assigned to Deborah Mack (DM) as supervisee | - |
| on or about | 11.15.18 | reason given for reassignment was innapropriate considering reception desk always had alternating coverage pre temporary assignment | - |
| on or about | 12.19.18 | Verballyand physically assaulted at desk | - |
| on or about | 12.19.18 | Contacted Watson of WPV Occupational Safety and Health Unit (OSHU) for guidance in alignment with established ACS WPV policy | - |
| on or about | 12.19.18 | email auto acknoledgement from Watson | - |
| on or about | 12.28.18 | email and agenda submission request for follow up meeting on WPV incident ignored by COO Wesley Gibson (WG) | - |
| on or about | 12.20.18 | emailed Brochete as advised by ED of WPC OSHU for WPV training -ignored | - |
| on or about | 12.3.18 | innapropriate overstaep of DM into protected class info and potential violation of HIPPA by ACS OEEO and continued Harrassement and exposure of protected confidential information | - |
| on or about | 11.30.18 | innapropriate supervision of Lunch -off duty-time by supervision. | - |
| on or about | 12.12.18 | Continued discussion regarding title change and permanancy in new assignment -as forcefully directed by supervisor determined to be involved in protected procedure beyond scope of her work task. | - |
| on or about | 12.3.18 | DM attacked me with harrassment and untruths as per EAP provided guidance. | - |
| on or about | 11.30.18 | Overstep into lunch discussion | - |
| on or about | 12.13.18 | DM purposefully mischaracterized my Reasonable Accomodation and Work situation, and was corrected by HR | - |
|  |  | contradicted own directive in attempt to confuse petitioner, in gross misuse of power -directed petitioner to remember to copy her on all emails -including those not related to directives or objectives-harassing and micromanaging petitioner in relentless effort to secure petitioner resignation to avoid agency compliance | - |
| on or about | 11.29.18 | with R.A. | - |
| on or about | 11.27.18 | DM continued to make requests and issue directives contradicting petitioners approved R.A , despite specific verbal and email directive to not. | - |
| on or about | 12.7.18 | DM verified Tasks and Stadards-demonstrative of expectations of petitioner-were in line with her title standards-contracting all ACS claims that petitioner was not performing her role as a JC or YDS. | - |
| on or about | 12.4.18 | Inappropriate and abusive level of micromanagement by DM | - |
| on or about | 12.6.18 | DM reminded by ACS HR to CC them inall directives to Petitioner. | - |
| on or about | 12.7.18 | Petitioner emailed HR regarding Ms. Mack and her continued obstruction of petitioner completing her daily assignments and leave. | - |
| on or about | 12.13.18 | Email to HR shoing that DM submitted fals documentation in violation of their directive and that Petitioner felt uncomfortable interacting with DM, without an intermediary due to continung violations and WPV. | - |
| on or about | 12.7.18 | Example of DM directive and subsequent modeling of proper directive by HR. | - |
| on or about | 12.13.18 | DM and Petitioner directed to CC HR always | - |
| on or about | 8.28.24 | Documentation of Petitioners request to stop being compelled to work overtime prior to shifts start-under threat of RA being revoked and reminder of never ending probation for Employess on R.A. due to disability . As well as loss of previous priviledges granted by Director Garland to take lunch at days end. | - |
| on or about | 7.11.19 | In person appointment with EAP due to stress of harassment and unrelenting micromanagement and ridicule allowed by ACS supervisor , by her supervisory team and HR. | - |
| on or about | 12.13.18 | demonstration of DM's Harrassment during off duty lunch hour | - |
| on or about | 12.14.18 | continuation of DM harrassment | - |
| on or about | N/A | 2018 EAP Policy including examples of harassment | - |
| on or about | 8.30.19 | requested breakdown of last check provided by ACS-ignored by Executive Director of Personnel | - |
| on or about | 6.10.19 | promise of reply to concerns was not met and ignored by ACS General Council Ambrose in relation of not being paid on par with title and being retaliated against for R.A request. | - |
| on or about | 12.7.19 | Willie Maye ACS Executive Director of Employment Services stated that I would retrn to YDS status in contradiction of previous communication | - |
| on or about | 12.4.18 | Proof of work submitted to DM, who denied me pay for the time it took to complete the work requested . | - |
| on or about | 6.25.19 | recommendation for graduate program submitted by ACS Director and Supervisor | - |
| on or about | 5.30.19 | Agency delay of document needed for graduate program -submitted in February of 2019 -other similarly situated co workers had their documents signed within 1 hour of request. | - |
| on or about | 8.21.19 | stated there was no video of work site on 6th floor on 7.16.24 in response to FOIL request for aforementioned. | - |
| on or about | 4.16.24 | showed that ACS puposefully witheld video requested in foil request and lied about weather it existed. | - |
| on or about | 11.28.18 | verified still working as YDS and under limitations | - |
| on or about | 12.6.19 | recap and pushback to harrassment with inclusion of necessary supervision of DM, for accountability, and to highlight continuing issue. | - |
| on or about | 6.19.18 | Executive Director of Administrative Program Support DYFJ communicated ACS understood petitioners R.A was permananet and was actively working on a transfer to a suitable position under ADA policy. | - |
|  | 5.13.24 | To present, experiencing Continuation of Harrassment and Slander based on Disability by ACS via agencies not following proper NYC Civil Service Practice/ protocol regarding Terminations under litigation and review. | - |
|  | 8.5.24 | Requested and Approved Ajournment Date requested by City of New York Corporation Counsel Phoebe Huth re: Article 78 NYS Supreme Court Review of NYSDHR matter 2023 -109764 " matter before EEOC | - |